REECE V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-076-CR

JASON LEE REECE APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

A jury convicted Appellant Jason Lee Reece of recklessly causing seriously bodily injury to a child (“count one”) and intentionally or knowingly causing bodily injury to a child (“count two”).  In three issues, Appellant challenges the factual sufficiency of the evidence to support the verdict on count one and the legal and factual sufficiency of the evidence to support the verdict on count two.  We affirm in part and reverse and render in part.

Factual and procedural background

The alleged victim in this case was Aaliyah Reece, the three-month-old daughter of Appellant and Karla Bianchi-Reece.  Neither Appellant nor Karla testified at trial.

On January 31, 2002, Appellant and Karla took Aaliyah to a doctor’s office for a well-baby checkup.  The doctor’s nurse testified that she observed scratches on Aaliyah’s lower abdomen and four abrasions on her lower back. The doctor reported the injuries to Child Protective Services. 

Later that same day, Karla went to the hairdresser.  The hairdresser testified that while she was cutting Karla’s hair, a man (she was unable to identify the man as Appellant) brought Aaliyah to the hair salon.  Aaliyah had red marks on her head. 

The next day, a CPS investigator made an unannounced visit to Karla’s house.  She observed a scratch on Aaliyah’s forehead, a slight red spot on her abdomen, a red mark on her shoulder, and what appeared to be old, healed wounds on her back.  Karla explained the marks by telling the investigator that there were cats in the house and that she could not keep the cats away from the baby.

On February 19, 2002, Appellant went to Karla’s house after work.  Karla left Appellant alone with Aaliyah while she ran errands.  When Karla returned, she noticed that the baby was not breathing normally.  Appellant told Karla that Aaliyah was simply having an asthma attack.  Soon thereafter, Aaliyah’s eyes rolled back in her head, and she began to move her arm rhythmically.  Appellant argued with Karla about the baby’s condition then got mad and left.  As he was leaving, Karla’s grandmother, with whom Karla and Aaliyah lived, arrived at the house.  Karla or her grandmother called 911.  Emergency medical personnel arrived soon thereafter and transported Aaliyah to the hospital.

Police interviewed Appellant at the hospital.  He repeatedly denied that Aaliyah had been in any kind of accident or that he had abused her and had no explanation for Aaliyah’s injury.  In particular, Appellant said nothing about slipping and falling with Aaliyah while giving her a bath. 

Aaliyah died later that evening.  The next day, Appellant’s father called CPS and told them that Appellant wanted to make a statement.  Appellant told police that he fell with Aaliyah while bathing her.  Police asked Appellant to reenact the accident in the bathroom at Karla’s house.  Appellant complied and police videotaped the reenactment. 

Dr. Peerwani, the medical examiner for Tarrant County, performed an autopsy on Aaliyah’s body the following day.  He testified that the cause of death was blunt posttraumatic injuries to the head.  Aaliyah’s skull had a three-and-a-half-inch fracture.  Her brain was tremendously swollen.  The symptoms discovered by Karla—difficulty breathing, eyes rolled back in her head, and moving her arm rhythmically—were consistent with the skull fracture and would have manifested themselves in no more than five or ten minutes of the injury. Aaliyah’s head injury was equivalent to the injury that might be suffered by an unrestrained passenger in a 30 to 60 miles-per-hour car crash.  In addition to the injury that caused her death, Aaliyah had several contusions on her face, head, chest, back, fingers, and wrist.  Her adrenal gland was traumatized and broken into two parts.  Her liver was crushed.  Dr. Peerwani testified that Aaliyah’s injuries were “totally inconsistent” with the slip and fall reenacted by Appellant. 

Dr. Chapa, the board certified emergency room physician who treated Aaliyah, also testified.  He agreed with Dr. Peerwani’s opinion as to the cause of death.  Dr. Chapa also agreed that the symptoms observed by Karla were due to Aaliyah’s brain injury.  Dr. Chapa watched Appellant’s videotaped reenactment and testified that the reenactment was not consistent with Aaliyah’s injuries. 

A grand jury indicted Appellant for intentionally or knowingly causing serious bodily injury to a child and intentionally or knowingly causing bodily injury to a minor.  The case was tried to a jury.  The court’s charge  included the lesser included mental states of recklessness and criminal negligence on both counts.  The jury found Appellant guilty of recklessly causing serious bodily injury to a child and intentionally or knowingly causing bodily injury to a child.  The jury assessed punishment at twenty years’ imprisonment and $10,000 on count one and ten years’ imprisonment and $10,000 on count two.

Discussion

Issues 2 and 3

Appellant’s second and third issues relate to his conviction on count two of the indictment, intentionally or knowingly causing serious bodily injury to a child, in connection with the January 31, 2002 incident in which the child was seen with scratches, abrasions, and red marks.  Appellant complains that the evidence was legally and factually insufficient to sustain the verdict.  We agree.

As a preliminary matter, we note that 
both counts of the indictment allege that Appellant injured Aaliyah “on or about the 19th day of February, A.D. 2002.”  When an indictment alleges that a crime occurred “on or about” a particular date, the State can rely upon an offense with a date other than the one specifically alleged so long as the date antecedes the presentment of the indictment and is within the statutory limitations period and the offense relied upon otherwise meets the description of the charged offense. 
Yzaguirre v. State
, 957 S.W.2d 38, 39 (Tex. Crim. App. 1997) (citing 
Sledge v. State
, 953 S.W.2d 253, 255-56 (Tex. Crim. App. 1997)).  The State duly notified Appellant of its intent to introduce evidence of the January 31 incident.  While the focus at trial was clearly on the February 19 injury that led to Aaliyah’s death, the briefs of both parties briefed the second and third issues as though they relate to the January 31 incident.  Because the jury convicted Appellant of recklessly causing serious bodily injury to a child with regard to the February 19 incident and we affirm that conviction later in this opinion, we, too, will analyze Appellant’s second and third issues in relation to the January 31 incident.

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).
  
The standard of review is the same for direct and circumstantial evidence cases.  
Burden v. State
, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001); 
Kutzner v. State
, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

With regard to the marks on Aaliyah 
observed by the doctor, nurse, and hairdresser on January 31 and by the CPS caseworker on February 1, the State presented no evidence that the marks were caused by any person, let alone Appellant.  Nor did the State present any evidence, direct or circumstantial, that Appellant knowingly or intentionally injured Aaliyah on that occasion.  Even considering the evidence in the light most favorable to the verdict, as we must do, the evidence is legally insufficient to support the jury’s guilty verdict on the second count of the indictment.

We sustain Appellant’s second issue.  Because we have concluded that the evidence was legally insufficient to sustain his conviction on count two, we need not consider his third issue, that the evidence was factually insufficient.  
See 
Tex. R. App. P.
 47.1.

Issue 1

In his first issue, Appellant argues that the evidence is factually insufficient to sustain his conviction for recklessly causing serious bodily injury to a child.  We disagree.

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.    In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain v. State
, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.  

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

Injury to a child is a result-oriented offense; thus, it is not enough for the State to prove that the defendant engaged in the conduct with the requisite criminal intent.  
Lee v. State
, 21 S.W.3d 532, 540 (Tex. App.—Tyler 2000, pet. ref’d). Instead, the State must also prove that the defendant caused the result with the requisite criminal intent.
  Id
.  A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient. 
Tex. Penal Code Ann. 
§ 6.04(a) (Vernon 2003).

A person acts recklessly when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur. 
Id.
 § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.  
Id
.  Reckless conduct involves conscious risk creation; that is, the actor was aware of the risk surrounding his conduct or the result of his conduct, but consciously disregarded that risk.  
See
 
Lewis v. State
, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975).  The culpable mental state is generally proven through circumstantial evidence. 
 See
 
Dillon v. State
, 574 S.W.2d 92, 94 (Tex. Crim. App. [Panel Op.] 1978).

Appellant argues that the evidence is factually insufficient to prove beyond a reasonable doubt that he, not someone else, fatally injured Aaliyah. He suggests that Karla injured Aaliyah when she was alone with the child for approximately thirty minutes between the time Appellant left the house and the time Karla called 911. 

The evidence does not support Appellant’s theory.  Karla told police that she arrived home between 3:45 and 4:00 p.m. and noticed that Aaliyah was having difficulty breathing.  Karla called her grandmother, Virginia Asbury, and asked her to come home because “I think there’s something wrong with Aaliyah.”  Asbury went home as soon as she could and arrived between 4:00 and 4:30 p.m.  Appellant was walking away from the house when she arrived, but he turned around and went back.  Asbury testified that Aaliyah was whiny but seemed “fine” when she arrived, yet the child stopped breathing a few minutes later.  Asbury or Karla called 911 at 4:24.  The evidence shows that Karla was alone with Aaliyah for a short time at most, not thirty minutes, and only 
after
 she had already reported to Asbury that something was wrong with the child.

We hold that the evidence was factually sufficient for the jury to conclude beyond a reasonable doubt that Appellant injured Aaliyah when he was alone with her before Karla returned home.  We overrule Appellant’s first issue.

Conclusion

We overrule Appellant’s first issue, sustain his second issue, and do not reach his third issue.  We affirm the trial court’s judgment with regard to Appellant’s conviction of recklessly causing serious bodily injury to a child.
  
Tex. R. App. P.
 43.2(a).
  We reverse the trial court’s judgment and render a judgment of acquittal on the charge of intentionally or knowingly causing bodily injury to a child.  
See
 
Tex. R. App. P.
 43.2(c), 51.2(d)
.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, HOLMAN and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
  August 18, 2005

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.